IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JENNIFER MARTINEZ,

        Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

        Defendant.

Civ. No. 3:16-cv-01580-MC

OPINION AND ORDER

MCSHANE, Judge:

        Plaintiff Jennifer Martinez brings this action for judicial review of a final decision of the Acting Commissioner of Social Security denying her application for Supplemental for Title II disability insurance benefits (DIB) and Title XVI supplemental security income (SSI). The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

        Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

        Plaintiff filed an application for disability insurance benefits and supplemental security income on February 4, 2013, alleging disability onset on January 2, 2012. Tr. 18. Both

1 – OPINION AND ORDER

applications were denied initially and upon reconsideration. *Id*. A hearing was held on November 2, 2015. On December 3, 2015, the ALJ issued a decision finding plaintiff was not disabled. Tr. 18-32. The Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

The Commissioner's findings are upheld if supported by inferences reasonably drawn from the record; if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Batson*, 359 F.3d at 1193; *Aukland v. Massanari,* 257 F.3d 1033, 1034-35 (9th Cir. 2000) (when evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision). A reviewing court, however, "cannot affirm the Commissioner's decision on a ground that the Administration did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). A court may not reverse an ALJ's decision on account of an error that is

harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

The ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Stark v. Shalala*, 886 F. Supp. 733, 735 (D. Or. 1995). *See also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence).

## THE ALJ'S FINDINGS

The Social Security Administration uses a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner at step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity, age, education, and work experience. *Id.*

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since the alleged onset date. Tr. 20. At step two, the ALJ found Plaintiff suffered from the following severe impairments: osteoarthritis, obesity, bipolar disorder, diabetes mellitus, fibromyalgia, anxiety disorder not otherwise specified, and depressive disorder not otherwise specified. *Id*. At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Between steps three and four, the ALJ determined Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except with the following limitations: lift or

carry 10 pound occasionally and less than 10 pounds frequently; stand or walk for about two hours in an eight-hour workday and can sit for about six hours in an eight-hour workday. Plaintiff can perform work that does not require her to climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. Plaintiff can perform simple routine, repetitive tasks. Tr. 23.

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work because of her RFC's non-exertional limitations. Tr. 30. The ALJ then determined that there were jobs that Plaintiff was capable of performing that existed in significant numbers in the national economy, specifically identifying the representative occupations of telemarketer and document preparer. Tr. 30-31.

## DISCUSSION

Plaintiff contends that the ALJ erred in establishing an RFC that did not include a finding that the Plaintiff needed to elevate her legs when sitting for a prolonged period of time due to lower extremity edema. Plaintiff contends, specifically, that the ALJ erred in improperly discrediting Plaintiff's subjective testimony that she needed to elevate her legs and in ignoring the medical opinion evidence that Plaintiff needed to elevate her legs. Plaintiff also contends that the ALJ failed to give proper weight to the psychological consultant's opinions, thereby resulting in an RFC finding that does not reflect the Plaintiff's social function limitations.

## I. Plaintiff's Testimony

Plaintiff asserts the ALJ wrongfully discredited her subjective symptom testimony concerning the severity of her impairments. At the hearing, plaintiff testified that because her feet swelled and ached, and her knees hurt, she spent most of her time in a recliner to keep her feet elevated. Tr. 55-56, 294-295. Plaintiff testified that due to swelling she could not sit with her

legs and feet down for longer than 20 minutes. Tr. 57, 253, 286, 296. Because of the need to elevate her legs, Plaintiff argues that her appropriate RFC is limited to less than sedentary. Pl.'s Br. 3, ECF No. 16.

The ALJ found that the claimant has a history of obesity, chronic pain due to fibromyalgia and osteoarthritis, and mental health impairment, along with diabetes without mention of complication. Tr. 24. The ALJ also found that ". . . the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Id*.

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). The ALJ's decision is required to "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, *available at* 2016 WL 1119029, at *9. In other words, a general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Here, the ALJ cited to twelve medical exhibits in support of his conclusion that Plaintiff had "little if any edema (swelling) or tenderness" in her lower extremities to support her reported

5 – OPINION AND ORDER

need to elevate her legs. Tr. 26. Plaintiff argues that the ALJ's reasoning amounts to insufficient "general findings" because the medical exhibits cited by the ALJ encompass hundreds of pages. For examples, the exhibits cited by the ALJ: 12F, 14F, 18F, 25F, 5F, 9F, 10F contain, respectively, pages Tr. 610-682 (72 pages), 713-776 (63 pages), 777-843 (66 pages), 875-1074 (199 pages), 1109-1170 (61 pages), 1325-1538 (213 pages), and 1666-1766 (100 pages). An ALJ's "vague allegation" that a claimant's testimony is "not consistent with the objective medical evidence," without "specific findings in support" of that conclusion is insufficient for the Court's review. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

Additionally, plaintiff cites to a number of pages in the medical record which contain multiple objective findings of swelling and tenderness which arguably contradict the ALJ's assertion that Ms. Martinez experiences "little if any edema or tenderness." For example, in 12F: Left knee "medial and posterior edema," antalgic gait, pain when palpated at the medial and anterior jointline, and over the patella (Mar. 14, 2012) (Tr. 878); pain when palpated on the dorsum of the left foot; a mass is palpable in the dorsal midfoot (Jan. 6, 2012) (Tr. 887); positive for pedal edema (mild) (Sep. 27, 2011) (Tr. 900); presents with edema and extremity pain; degree of edema has been getting better (Aug. 15, 2011) (Tr. 909-910); presented with edema present for 1-2 days, primarily in the lower legs and with associated extremity pain at rest, on physical examination 2+ pedal edema noted; degree of edema has been getting worse recently (Aug. 9, 2011) (Tr. 911-913); edema noted in the hands bilaterally, with tenderness in the left knee, no lower extremity edema (Dec. 29, 2010) (Tr. 931); nonpitting edema in the lower extremities (Apr. 8, 2010) (Tr. 1045).

See also Exhibit 14F: mild 1+ pitting edema bilaterally about the ankles (Dec. 10, 2012) (Tr. 1152; also at Ex. 13F, Tr. 1105); Ex. 18F: non-pitting edema in extremities (Mar. 14, 2013) (Tr. 1392), 2+ pitting edema in extremities (Feb. 6, 2013) (Tr. 1419; also at Ex. 15F, Tr. 1174); 22F: left knee tenderness to palpation (Tr. 1642); 25F: Leftfoot tender to palpation, abnormal gait, favors right foot (Tr. 1694); moderate edema (Tr. 1700)).

Despite Plaintiff's assertion that the ALJ's review of the medical record was cursory and failed to account for the above findings, the ALJ made specific findings to support its decision, pointing sufficiently to the record for this court to discern the ALJ's reasoning. *See Alaska Dep't of Entl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004). In addition, a number of the medical records referenced by plaintiff in support of her condition pre-date the alleged disability onset date of January 2, 2012, i.e. Tr. 900, 909, 931. Others notated only mild edema. Tr. 1152. Others still document the absence of edema, even after the alleged disability onset date. Tr. 806, 808, 886-87, 1422, 1507-08, 1849-50, 2082. Numerous records document a normal gait. 14F (Tr. 1115, 1118, 1121, 1124, 1127, 1133); 25F (Tr. 1666, 1672, 1677, 1700, 1703, 1708, 1712, 1716, 1719, 1722, 1726, 1730, 1740, 1745, 1750, 1755, 1762); 30F (Tr. 1900, 1908, 1913); 35F (Tr. 2071). Some records document Ms. Martinez's ability to exercise. Tr. 1192, 1575 1618, 1630, 1632, 1642.

Here, the ALJ's decision is supported by substantial evidence, which "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The administrative record contains 2,172 pages. From those pages, there may and likely will be evidentiary conflicts for an ALJ to resolve. If "there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th

Cir. 1984) (citing *Richardson*, 402 U.S. at 399); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

In addition to the medical evidence, the ALJ also provided other reasons for discounting Martinez's subject complaints. Because the ALJ provided multiple reasons for discounting Martinez's subjective complaints, an error as to one or more reasons is harmless if a valid reason remains. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2009).

For instance, the ALJ noted that Martinez demonstrated a capability to exercise with some regularity which undermines her allegations of disabling pain. Tr. 1192 (losing 15 lbs), 1575, 1618, 1630, 1632, 1642; *see also* Tr. 1580, 1582, 1586, 1620, 1636, 1680, 1683, 1693, 1848, 2081, 8092, 2098.

The ALJ also reasonably discounted Martinez's alleged physical limitations because Martinez failed to comply with conservative treatment. *Molina*, *supra*, 674 F.3d at 1113-14. The record shows a reluctance to diet and lifestyle changes needed to reduce Martinez's weight in order to reduce alleged pain. Tr. 1741 ("I feel that diet and lifestyle changes are greatly needed in [Martinez's] life but she is reluctant to do too much, which I feel we need to continue to push at every visit."), 1745 (same), 1751 (same), 1756 (same), 1763 (same); *see also* Tr. 1398.

A reluctance to follow conservative treatment, coupled with drug-seeking behavior, supports a reasonable inference that Martinez is not as disabled as she alleged. From an examination in March 2012, the physician noted that a drug monitoring query revealed a recent prescription and that Martinez made inconsistent statements about her access to such drugs. Tr. 844. Subsequent treatment providers suspected drug-seeking behavior. Tr. 1465-66, 1588, 1590, 1594, 1717, 1789, 1894.

The ALJ considered plaintiff's synovitis (inflammation around her knee joint) in establishing the RFC. Medical records do show a finding of lower extremity synovitis. Treating rheumatologist Rebecca Callis, M.D. noted complaints of intermittent swelling in the lower extremities, and knee synovitis on physical examination. Tr. 997, 1000-1001, 1086-1087, 1090-1091, 1094, 1095-1096, 1101, 1102, 1156-1157. The ALJ found though that Martinez's synovitis is contained in treatment notes from March 2012 to October 2012, when Martinez "ha[d] significant improvement of her synovitis especially about her knees." Tr. 1094. The treatment notes continues: "Unfortunately she still has persistent synovitis above her knees worse on the right as compared to the left." "Regarding her other health, she is doing well." *Id*. The ALJ also noted that Martinez's gait was consistently normal notwithstanding her synovitis. Tr. 25-26.

## II. Medical source opinions

Plaintiff asserts that the ALJ simply ignored certain medical opinions and, in doing so, failed to provide specific and legitimate reasons for rejecting them. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n 10 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) ("By disregarding those opinions [of treating and examining physicians] and making contrary findings, he [the ALJ] effectively rejected them. His failure to offer reasons for doing so was legal error."). Plaintiff points to an emergency department record from March 13, 2012. Tr. 844. Plaintiff presented with left knee pain due to "a long car ride" four days earlier. *Id*. Plaintiff denied any injury, but said she "may have twisted it." *Id*. She felt that her knee was swollen and was using ibuprofen without relief. *Id*. The examining physician noted that the "left knee appears normal when compared to the right but her legs are extremely obese. [The physician] did not appreciate any significant effusion." *Id*. The physician observed painful range of motion, diffuse tenderness, and a palpable popping sensation. The physician also notated:

> "After review of the Oregon prescription drug monitoring query, the patient has received 120 Percocet tablets for the last month, including 60 prescribed on February 29th. When the patient was confronted with this, she states that she "lost her prescription on the soccer field". Initially, when I first entered the room, the patient apologized for her dazed appearance by saying 'I just took my pain…sleeping medication.' "

Tr. 844.

> "I offered the patient an Ace wrap, and recommended ice, elevation, rest continued ibuprofen therapy and following up with her primary care physician for any further narcotics."

*Id*.

Plaintiff contends that she was *prescribed* leg "elevation and rest" to relieve her symptoms, and that this goes to the credibility of plaintiff's statement that she needs to elevate her legs to waist level when sitting in order to avoid swelling and pain. Pl.'s Br. 10, ECF No. 16. Plaintiff argues that the treating provider's opinion that Plaintiff should elevate her legs to relieve lower extremity swelling should be incorporated into her RFC. *Id*. Otherwise, the ALJ must explain why "significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

Defendant responds that the ALJ did discuss this examination in its decision. *See* Tr. 25, *citing* Tr. 844 (11F1), 878 (12F4). Defendant argues that the physician only "*recommended* ice, elevation, rest" after noting a drug monitoring query revealed a recent prescription and that Martinez made inconsistent statements about her access to such drugs. The ALJ subsequently noted that Martinez's different treatment providers suspected drug-seeking behavior which undermined her claim for disability. Tr. 28, 1465-66, 1588, 1590, 1594, 1717, 1789, 1894. At the second appointment, Martinez was prescribed rest "until the pain subsides, then gradually increase the use of the injured area as you are able to" for her left knee strain. Tr. 878. The ALJ noted subsequent objective imaging documented only "mild" osteoarthritis. Tr. 25, 982, 1107-08, 1362, 1626-27, 2094. Subsequent exams documented a normal gait. *See* Tr.25-26, 806

("ambulating well"), 1750 ("gait normal"), 1762 ("gait normal"), 2071 ("normal gait and station"). The ALJ also noted improvement with treatment. Tr. 25, 1095, 1104. This other evidence demonstrates that the March 2012 notes do not support long-term limitations.

The December 2012 note is a generic print-out discharge form pertaining to "Edema," generally. Tr. 1865. The form describes what edema is in general terms and provides general ways to treat it. The generic form is neither significant nor persuasive. The ALJ's failure to discuss the form is not error.

The March 2012 and December 2012 recommendations do not contain concrete limitations. *See Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 691 (9th Cir. 2009 (Mere recommendations are not an opinion that the claimant "is incapable of working *except* under the recommended conditions"), *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (Medical sources did not explain that characteristics would preclude claimant's work activity). In addition, the ALJ's assessment of the medical evidence is supported by the opinion of Martin Kehrli, M.D., Tr. 30, 94-95.

### III Psychological opinion evidence

Plaintiff contends that the RFC fails to reflect any social function limitations and that the ALJ erred in weighting the psychological consultants' opinion. Pl.'s Br. 22, ECF No. 16; citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

Here, the state psychology consultants found that Plaintiff is "able to perform solitary work, though this work has occasional contact with the general public." Tr. 29. They opined that Plaintiff had social interaction limitations, and was moderately limited in ability to interact appropriately with the public. Tr. 96-97.

The ALJ may reasonably discount medical opinions to the extent that they conflict with other evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Because the two were non-examining psychologists, the ALJ could reasonably reject their opinions "by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

Here, the ALJ discounted the opinions to the extent that they restricted Martinez to solitary work that required no more than occasional contact with the public. Tr. 29, 97, 128, 132-33. The ALJ reasoned that "the overall medical evidence of record," Plaintiff's "activity level," and reported "improvement" did not support a limitation to "solitary work" or work which involved only occasional contact with the general public. Tr. 29-30. In the alternative, Defendant argues that any error is harmless, because the ALJ found that Martinez could work as a document preparer, DOT#249.587-018, *available at* 1991 WL 672349, Tr. 31, where contact with people is "N – Not Significant."

First, in discounting their opinions, the ALJ found that Martinez engaged in social activities, including attending her children's soccer games, participating in group therapy, and going out with friends. Tr. 27, 1211 (soccer), 1188-1302 (group therapy), 1962 (going out with friends); *see also* Tr. 819, 1189, 1194, 1228m 1256, 1262, 1606, 1776, 1781.

Second, the ALJ found that Martinez's mental health improved with medication in 2012 (Tr. 26, 1148), and thereafter, mental status exams revealed normal mood and affect. Tr. 26-28, 1557, 1559, 1562, 1575, 1578, 1797, 2065-66, 1132. The records document normal mood/affect or appropriate/cooperative behavior. Here, the ALJ's interpretation of the record is reasonable. *Molina*, *supra* 674 F.3d at 1111.

## CONCLUSION

Because substantial evidence exists within the record as a whole to support the Commissioner's decision, this Court AFFIRMS the Commissioner's Decision.

IT IS SO ORDERED.

DATED this 12th day of January, 2018.

                               /s/Michael J. McShane
                               Michael J. McShane
                               United States District Judge